Good morning, Your Honors, and may it please the Court. My name is Lennon Haas, and along with my partner, Andy Scroggins, we represent the defendant appellant, TekSystems. May I reserve three minutes for rebuttal? Of course. Counsel, please be reminded that the time shown on the clock is your total time remaining. Absolutely, Your Honor. Thank you. The District Court's refusal to compel arbitration was improper for two reasons. First, Rule 23d does not provide authority for courts to invalidate voluntarily entered into nonadhesive arbitration agreements. Instead, the Federal Arbitration Act, a statute conspicuously absent from the District Court's order here, tells us when that's okay. And second, Tek did not waive the right to compel arbitration, regardless of what Rule 23d provides. So starting where we always do. What's our standard of review on the issue of whether or not you waived the right to arbitrate? De novo, Your Honor. That would be Hill v. Xerox and Neworth. And what about the standard of review on the denial of the motion? De novo as well, Your Honor. Hill v. Xerox is pretty clear on that. Okay. If we had a chance to write on a new slate, would it not make more sense for the factual determinations to be reviewed for clear error? I think it would. I think it would, Your Honor. Absolutely. And while I have you, at some point are you going to address our Dominguez decision and whether it sort of predicts what we should do in this case? I certainly can, Your Honor, in just a moment, if that's okay. You know, I want to start with the text of Rule 23d. There's a clear theme throughout all of its subsections. It addresses things like notice. It addresses how to manage the class process. It addresses procedure. In fact, the last part of it says, and deal with similar procedural matters. I'm sorry. Can I just, on one point you just said, under Patrick, the factual findings for a motion to compel arbitration, they are reviewed for clear error. That's right, Your Honor. I'm sorry if I misspoke, yes.  What Rule 23d doesn't really speak to are matters of substance, are matters like do you have the right to contract with another party? Can a district court invalidate or refuse to enforce a contract? It certainly, by necessity, includes things like overseeing communications with putative class members, but that relates to a notice process. That relates to other procedural matters. Counsel, could this order be considered a case management order? I don't think so, Your Honor. I mean, the court was addressing the motion before it, which was a motion to compel arbitration. I don't think that, you know, that's necessarily a case management concern. But what case do you have that would support the proposition that managing a class action process is not, does not come within the rubric of case management? I think managing a class action does. I think, though, that this order doesn't just do that. That's not part of managing the class action? I think that deciding whether or not to compel arbitration is not necessarily a class management concern. I think that— A case management, that's not a case management concern? I mean, if whether or not to compel arbitration is a case management concern, then I don't know what the outer limits of that term mean. I think that that could suck in any number of things if something like whether or not to compel arbitration qualifies as case management. You know, basically anything can be case management. But what's your definition? What's your definition of case management? Well, I would probably, in this case, look to Rule 23d for a little guidance there and say, okay, you know, what's this notice process? But it has to be broader than Rule 23d. Case management has to be broader than that. Sure. So generically, what does case management mean to you? I would think kind of the course of proceedings. How long is discovery going to last? What are the contours of discovery? Are we going to bifurcate liability and damages at trial? You know, how many witnesses are each side going to be permitted to take? Contents of a scheduling order at the outset of civil litigation. Those come to mind as case management issues. Rule 23d, it has an opt-out procedure, but you all created an opt-in procedure, right? Because you said, you know, anyone who stays employed by the end of 23 is automatically going to be subject to our new arbitration agreement. And if you want to stay a member of this class, you have to opt in by January 9th. You have to opt out of the arbitration agreement? Is that what you're referring to? Well, Rule 23 requires opt-out, but your arbitration process made it an opt-in because you have to opt into the class by submitting that form by January 9th of 24, saying you don't want to be subject to this arbitration agreement. So why wouldn't Gulf Oil granting district courts broad authority to control class actions plus Rule 23 give the district court the authority to do what it did here? Well, so two parts to answer that, Your Honor. Number one, Gulf Oil also said, you know, you have broad discretion, but you need to impose or order the least restrictive relief possible under the circumstances. Here, invalidating or refusing to enforce these agreements for this case, you know, we'll concede the district court didn't say, no, these agreements are no good for any case. But refusing to enforce them for this case was not the least restrictive means. What would be a less restrictive means? Well, could have ordered corrective notice. But corrective notice without an opportunity to opt out doesn't take care of any misleading communication or potential coercion, right? How does it remedy any misleading or coercive communication? Well, corrective notice. We're just putting you on notice that you were misled and coerced? How is that an adequate remedy? Well, I don't think by itself necessarily it would be. A, I don't want to concede that it's necessary here, for one thing. I don't think that we think our communications in those two emails that went out to the arbitration parties here were misleading or coercive. But stepping back from that for a second, you know, corrective notice by itself wouldn't necessarily be the only remedy. I mean, you could order corrective notice. You could order an additional opt-out period to give them another opportunity to say, no, I don't want to be subject to this arbitration agreement. You could even order a longer period of notice for them to consider that. In your briefs, you only rely on corrective notice, correct? I'm sorry. Could you say that again? In your briefs, you only say the narrow, limited resolution here would be corrective notice. You don't say, and I would give an additional period for class members to opt out of the arbitration agreement. I think that if that's what we say in our briefs, that's what we say in our briefs. But I do think that, you know, to your point, Gulf Oil affords the district court broad discretion, and it could go beyond corrective notice. It could order an additional period of time for people to consider whether to opt out of the arbitration agreement. And why did your client make it, or perhaps you in advising your client, make it an opt-in instead of an opt-out? Well, I don't think that — Which would have been more consistent with Rule 23. I think that's — it's just kind of a product of — not imposing, but promulgating an arbitration agreement and giving them the ability to opt out. It's just kind of a consequence of that. It's not, you know, an intentional act on the part of tech or us as lawyers to create an opt, you know, to kind of go the reverse route of Rule 23 and kind of — To force people over the holidays, when you send it out December 19th, saying, if you don't — well, I guess the agreement itself was confusing because it says, all new and current employees will be subject to the arbitration agreement as a condition of working for the company. If you choose to continue working here after December 31st, 2023, you will be deemed to have accepted the arbitration agreement, and we are asking for your signature to reflect that. So on the one hand, you're saying, hey, look, unless you either get fired or quit, if you're still here as an employee by December 31, you're bound. But, oh, on top of that, give us a signature. How is that not confusing? So that — well, A, that's not the only communication that went out to the putative class members who — Okay, well, let's look at the other one then. It says, the company is adopting a policy of requiring mutual arbitration that will go into effect on January 1, 2024. You may opt out of the arbitration agreement for the limited purpose of keeping your ability to participate in that lawsuit by signing and returning the attached agreement by January 9, 2023. So that's confusing, right? Because you're saying you're bound by this arbitration agreement as of January 1, but you opt out of this agreement nine days later, even though you've already been bound by it for eight days. And this is also misleading because you're not opting out of the arbitration agreement just for the limited purpose of keeping your ability to participate in the lawsuit. It means you won't be bound otherwise, right? There could be other implications of not being bound by that arbitration agreement. Potentially. If — but again, if those communications are found to be misleading or unclear, Rule 23 provides for remedies like corrective notice. We've already been through those. What it doesn't say, though, is, hey, you can refuse to enforce that. I think our main point here is Rule 23 embodies a Federal policy favoring court control over class actions in the class process. The Federal Arbitration Act embodies a Federal policy in favor of enforcing arbitration agreements. If you lodge the authority for a district court to invalidate or refuse to enforce an arbitration agreement within Rule 23, you're cross-pollinating those two policies and creating potential confusion. The better course would be to say, look, the FAA's savings clause provides the outlines for when a court can refuse to enforce an arbitration agreement. So look into things like unconscionability. But both oils says that the district court's broad authority to exercise control over class action includes entering orders governing the conduct of parties in counsel. So if the district court had access to these documents and these mutual arbitration FAQs that your client sent out that said, you know, class actions are wasteful, inefficient means for resolving disputes and tend to enrich only attorneys rather than individuals who may have legitimate claims, a class claim requires the company to ignore individual employee issues and concerns. Additionally, attorneys, not employees, are often the biggest winners in class actions, often charging exorbitant fees to both the class and the employer involved, reducing the money actually received by class members. Let's say the judge had the opportunity to look at the communications we just discussed and these FAQs beforehand. Would you agree that before the communications went out, the district court would have had under Gulf Oil and Rule 23d the authority to enjoin these communications from going out? Would you agree with that? Yes, Your Honor. Absolutely.  So then why does it matter that you guys got these out without the district court's  Why should that authority to enjoin not include the authority after the fact to invalidate? Well, I think it's two separate things. You're talking about control over communications, control over what putative class members hear from one party or the other, and invalidation of an agreement. Those, to me, are two very different things, and they have two separate, you know, two separate sources of authority. And if you look at the FAA, it provides for the circumstances when a court can refuse to enforce an arbitration agreement. And those circumstances aren't present here. You know, they were afforded an opportunity to opt out. And as for, you know, this being promulgated on December 19th, arguably, that's an opportunity when people are less occupied by things like work. And again, there's really nothing in the record, though, to indicate whether people were or were not on vacation or were or were not paying attention to their email. It's a very sparse record to make the determinations that the district court made. And you say, oh, and go and get a lawyer if you want to consult with someone about it. Who is going to find a lawyer between December 19th and December 31st to advise them about an agreement? The only thing I would say to that, Your Honor, is that the hyperlink was there to the complaint in Avery that had counsel's contact information right up front. But before you leave, I wanted you to talk briefly about the waiver by litigation. Sure. Oh, well, so to start, I would say there's two very different considerations here. There's the right to enter into an arbitration agreement and the right to compel arbitration. So you've already got an arbitration agreement in place. I'm not aware of a case that has said you have, by litigation conduct, waived your right to enter into an agreement. Certainly, there's a legion of cases saying that. Well, there are definitely cases that say you waive your right to compel.  If you proceed to litigation to a certain point and then try to backtrack. Absolutely. And rely. So why doesn't that premise preclude your argument here? Because, Your Honor, the agreements, they were promulgated on December 19th. They were effective January 1. So I think the time period that you've got to look at is from January 1, when these agreements were effective, to July 15th, when Tech moved to compel. And if you look at its litigation conduct during that time period, it was not litigating merits issues. It was not engaged in the type of conduct that the case's finding waiver said constituted an intentional relinquishment of the right. I understand your argument. Thank you, Your Honor.  We'll give you a couple minutes for rebuttal. Good morning, Your Honors. Good morning. Shelby Leighton for Plaintiffs Appellees. I think it's important to take a step back and understand how we got here. Tech waited until after discovery and after class certification briefing to impose individual arbitration agreements as a mandatory condition of employment. In doing so, it disparaged class actions in court, including, quote, that they tend to enrich only the attorneys, that class members will be on the hook for, quote, exorbitant fees, and that they would require Tech to do the same. I think it's important to take a step back and understand how we got here.      I think the choice of remedy here that the district court chose, it could have chosen an extended period and opting out, although that wouldn't have fixed the fundamental problem that a Rule 23 class action is supposed to be an opt-out class action, and you would still be asking people to affirmatively opt into the class action. But I also think even if an opt-out period would have amounted to essentially the same thing as invalidating the agreement — But I just said corrective notice with opt-out. Isn't that then consistent with Rule 23 opt-out? No, because it would be opting out of the arbitration agreement and into the litigation. And so if you had a corrective notice that said, okay, now you have an additional 30 days to opt out of arbitration, it would still require class members to take an affirmative step to opt into being part of the class action rather than under Rule 23 when they would have to take an affirmative step to opt out of the class action. But I think that this relief here was also narrowly tailored in that it focused only on the class members in the case and only on invalidating the agreement as to this case. So in a sense, it's similar to giving people the chance to opt out in that it allows class members to proceed with the case, but everyone else to still be subject to the arbitration agreement. But what if there are some recruiters who do want to arbitrate now? They don't have the opportunity, right? Is the answer to them just tough luck because how this came down? Or what's the answer? No, I think those recruiters could still opt out of the class action and pursue their claims against tech separately. And in fact, only two people did choose to opt out of the class action here. And so those people could choose to bring their claims against tech in whatever form they would like. But the idea is that no one who wants to be in the class, which is everybody except those two people, would not be then compelled into arbitration and unable to pursue their claims on a class-wide basis. Counsel, my understanding of what the opposing party is saying is that while there might be a number of instances where Rule 23d would be appropriate, it's not appropriate to use it this way when you have a statute like the FAA. Would you address that? Yes. And would you also address the Dominguez opinion of this Court? Yes, absolutely. So the FAA mandates enforcing arbitration agreements save upon such grounds as exist at law or in equity for the revocation of any contract. And Rule 23d is such an equitable ground for revoking a contract. And it applies to all types of contracts. It's not specific to arbitration. For example, in the Wang case, this Court invalidated opt-out forms. In the Dominguez case, there were release agreements. In the Fox case from the Sixth Circuit, there were attorney-client representation agreements. So nothing about Rule 23d singles out arbitration agreements for unfavorable treatment, which is what the Savings Clause in the FAA prohibits. And on the other hand, if you accept the defendant's argument that Rule 23d can be arbitration agreements, that would be creating an arbitration-specific rule, which this Supreme Court's decision in Morgan v. Sundance prohibits. There the Court said you can't create an arbitration-preferring rule just under the guise of this FAA has a presumption in favor of arbitration that defendants keep citing. It you have to treat arbitration agreements like all other contracts. And if you could invalidate all other types of contracts under Rule 23d, then you have to be able to invalidate arbitration agreements under Rule 23d. In terms of this Court's decision in Dominguez, I think that Dominguez conclusively rejects defendants' argument that Rule 23d doesn't allow courts to issue rulings that regulate the conduct of counsel in the parties. This ruling was clearly within the scope of the type of relief that the Court could order here, and district courts do routinely, in the circuit, do routinely invalidate arbitration agreements under the Rule 23d authority. And in Dominguez, this Court recognized that the authority was broad, recognized that district courts have been doing that, but then declined to reach the arbitration agreement issue, but did reach the Court's corrective actions and held that those actions were appropriate under Rule 23d. Additionally, just to go back to their arguments on the FAA about how somehow the equitable defense or a state law defense, that is not the case. As I mentioned, the FAA refers to the phrase or inequity. And so to say that there has to be some sort of legal argument for why the contract is unenforceable is just not supported by the text of the statute. And Rule 23d is a clear exercise of the Court's equitable discretion to invalidate through interfering with the class action process. And this is, again, a quintessential example of a generally applicable equitable defense. In Gulf Oil, this Court, or sorry, the Supreme Court, said that courts have the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties. And that's exactly what the Court did here. That's exactly what this Court has said is appropriate in Dominguez and Wang. The district court did not clearly err when it held that Teck usurped the Court's role in overseeing the notice and opt-out process. Teck sent class members an arbitration agreement that would automatically bind them if they did not quit their jobs and did not give them an option to opt-out. So there's no evidence in the record that any internal employees, including the recruiters, were actually confused by the different communications. So how should we weigh that? Right. So district courts in this circuit have been clear that there's no requirement that plaintiffs show actual harm, just that under Gulf Oil there must be, quote, potential interference. And, for example, in Dominguez, this Court did not require evidence about whether class members were in fact misled or coerced, and instead looked to the content of the communications, the timing of the communications, the circumstances around the communications going out, and concluded that on their face they were misleading and coercive. And like in Dominguez, the district court here carefully analyzed those factors and found that the communications falsely conveyed that class members would have to pay exorbitant fees and falsely conveyed that the company would be required to ignore their concerns. Let me ask you another question about your waiver argument. If class members didn't opt out of the arbitration agreement until January 9th of 2024, how, you know, we have to look at the test in the Ninth Circuit, which is the test for the waiver of the right to compel arbitration includes the knowledge of an existing right to compel arbitration and intentional acts inconsistent with that existing right. So how did tech systems have an existing right to compel arbitration before January 9th of 2024? So in the Hill case, this court said that you have to look at the totality of the party's actions. And Hill also said that you do not have to have a present right to move to compel arbitration in order to raise the arbitration issue to the court. But these two elements have the word existing before right. Are we supposed to read that out? I don't think you have to read it out. But I think that there's two rights at issue here. There's the right to impose these arbitration agreements on workers, and then there's the right to move to compel arbitration. And I think the court in Hill was clear that even if your right to move to compel arbitration has not attached yet, you can still engage in conduct that is inconsistent with that right that you now have looking back retroactively. And so in this case, there was a series of conduct, including waiting until after discovery and after class certification briefing to roll out these arbitration agreements. But then there's also post-agreement conduct that Tech engaged in. But what case says that you merged the analysis of the right to compel and the right to impose arbitration? So, again, I think the totality of the party's actions language from Hill suggests that that's exactly what you do. But another case to look at is the DiGidio case from the Fourth Circuit, where the court examined both pre-agreement and post-agreement conduct. So there, the defendant had waited more than a year into litigation at the very end of the discovery period to begin entering into arbitration agreements with class members. And then after it entered into the agreements, it waited another two months before it filed its opposition to the plaintiff's motion for class certification and raised arbitration for the first time. And the court said that the totality of that behavior was waiver. And so I think this Court could take a similar approach and look at both the pre-agreement conduct and the post-agreement conduct as a continuing course of behavior. But does the right to impose arbitration exist when the class members still have the opportunity to opt out of the arbitration agreement? I think that it does here. So what happened here, to be clear, is that they imposed arbitration on class members, and then they gave class members separately a limited opportunity to opt out. So they're still enacting this policy that applies to all of their employees. But even with the fact that class members did have this opportunity to opt out, tech easily could have... But is that just an eight-day window? They had the right to impose as of January 1, 2024. Class members have until January 9, 2024 to opt out. So is that right just as an eight- or nine-day window here? I don't think so because... The right to impose arbitration? I think the issue here is whether they should have alerted the Court in some way that they were planning to roll out this arbitration agreement as of... During... Still during discovery is when they decided to do this. They didn't tell the Court. They didn't tell opposing counsel. They waited until class certification had been fully briefed to then say, oh, by the way, opposing counsel, we sent out these arbitration agreements to all of the class members. And then even when plaintiffs raised that with the Court, tech still said, we're not sure. We might not move to compel arbitration. We don't know. The class certification hearing goes by. They still say, you know, we're not... You know, they don't say anything about arbitration at the class certification hearing. And it's only until they've lost class certification, they've seen the summary... The plaintiff's summary judgment motion, they've seen who's opted out of the class, that they move to compel arbitration. And so, again, it's... In cases like D'Ghidio and Hill stand for the proposition that you can consider that failure to even mention arbitration when they knew they were going to roll the agreement out early in the process so that the Court could... You know, if they had said, we're going to roll out arbitration agreements in September, the Court could have helped manage that process so that it didn't end up with this misleading and coercive notice that ended up going out to the class members and would have been able to consider arbitration as part of the class certification process. Counsel, before you conclude, could you address the litigation waiver argument? Yes. Yeah, so I think that the waiver is the totality of the conduct that I just described. So waiting until after the class discovery and class certification briefing to impose this arbitration agreement that they could have imposed at any time, not informing anyone that they were going to do this during the course of the discovery and class certification briefing, then after the agreements went into effect, not raising it at class certification, waiting until after summary judgment motion had been filed, waiting until the notice period was almost over in order to... What case best supports your argument that this conduct constituted a litigation waiver? So I do think that the DiGidio case from the Fourth Circuit is the most factually analogous case. You don't have a Ninth Circuit case? I mean, I think that the law on waiver, the general principles of waiver from the Hill case absolutely support that this was waiver here, but I think in terms of facts that involve both pre-agreement and post-agreement conduct, the most analogous case factually would be the DiGidio case in the Fourth Circuit. All right. Thank you, counsel. Thank you. Rebuttal. Thank you, Your Honor. Just a couple of quick points. Number one, if this was a Rule 23d order, we wouldn't be here and this Court wouldn't have jurisdiction. It was a denial of a motion to compel. That's why this Court has jurisdiction over this appeal. Number two, I think one of the only facts in this record that speaks to whether or not these communications were misleading or coercive or anything like that is how many people that this arbitration agreement was promulgated to, how many of them chose to opt out? Twenty-three percent, which is incredibly high in these situations. Courts have said 10 percent, 15 percent is evidence that the communications weren't coercive or misleading. Number three, this DiGidio case from the Fourth Circuit, it's fairly nothing like this one. Number one, the arbitration agreement there contained no opt-out provision for the people that received it. It was purely adhesive. Number two, the defendant's litigation conduct there was quite unlike Teck's. The defendant had moved for summary judgment after promulgating the arbitration agreement, but before moving to compel. The conduct was just nothing like Teck's here. Can I ask you about the timing? In a number of places you say, well, we couldn't file our motion to compel arbitration until the class period closed because we didn't know who was in the class, and yet you still filed your motion to compel arbitration five days before the class period. That's right, Your Honor. So it just seems very, there's a tension there. So which way do you want to go? You want to go with the we couldn't file until we knew or but somehow we did anyway? Well, so two things on that. Number one, the timing of that filing being five days before notice closed came because the district court asked for it to come then. There is... No, the district court asked a number of times and you all didn't do it. Well, that time I think that... I don't find that persuasive, right? I think the feeling on our side was that that time was a little more insistent, a little more of an order as opposed to a suggestion. The district court said at the March 14, 2024 case management conference that there was no reason why you would wait until the end of the class notice period to file this motion to compel arbitration, but you still didn't file until June 10th. April, May, June, so I find it... Well, so two things, Your Honor. Number one, I don't think we felt like that was an order. Had it been, we absolutely would have filed when the district court told us to. So what is the document that you're saying is an order to file that then triggered that June 10th filing? No document, Your Honor. I think it was just a sense on our side that there was more insistence later in the process. But number two, the hearing on that motion to compel, that when you file the motion you have to set a hearing as well, that was well after notice closed. So by the time that hearing rolled around, we did know who had opted out, who had opted in. Well, you filed on June 10th. Are you saying the district court should have had a hearing before June 15th when the notice was rolled? No, no, no, absolutely not. I think the filing came on June 10th, but the hearing itself came after. What was the specific date that you felt the district court was asking you to file your motion promptly if you didn't think the March 14th, 2024 CMC was that request that you filed promptly? If you didn't think that was anything you needed to respond to? Your Honor, I'm going to be frank. I don't remember the precise timing of the communication from the district court that prompted us to file on June 10th. Before my time runs out, though, I also want to point out — You're over your time, so you need to wrap up. Oh, I'm so sorry, Your Honor. Well, with that said, we would just ask that you reverse the district court and remand with instructions to compel arbitration. Thank you.  Thank you, counsel. Thank you to both counsel for your helpful arguments. The case, as argued, is submitted for decision by the court. That completes our calendar for the morning. We are in recess until 9.30 a.m. tomorrow morning. All rise.
judges: RAWLINSON, KOH, Fitzwater